Next case is Farren C. et al. v. School Districtof Philadelphia. Ms. Goodchild? May it please the Court, I'm Kara Goodchild. I'm here on behalf of the School District of Philadelphia and I request to reserve five minutes for rebuttal. That request will be granted. Thank you, Your Honor. This case involves a severely disabled adult individual. Farren C. is now 24 years old. This case is about not whether comp ed or compensatory education should have been awarded or the amount of compensatory education that she was entitled to, but what compensatory education can consist of. Here we have a case where all parties agree that the school district failed the student at the time she was school age and agree that the school district needs to take responsibility and provide her with compensatory education for a period of three years. Where the parties disagree is what the school district's responsibilities are in terms of the compensatory education. Because the Individuals with Disabilities in Education Act only protects children, children ages 3 to 21, it is the school district's position that Farren, as an adult, is not entitled to all the rights and remedies under the statute. And, in fact, the district court agreed that she has no statutory entitlement to the rights and remedies of the IDEA. In effect, she's no longer entitled to FAPE. The cornerstone of FAPE, of Free Appropriate Public Education, is the IEP. And the IEP, what is significant about it, it is a forward-looking document that plans for the child's educational progress. It sets up goals, it sets up monitoring, and requires a lot of responsibility on the part of the local educational agency, which is the school district. But didn't the court properly distinguish between the statutory right to a FAPE and an IEP, which terminates at age 21? And, on the other hand, the whole notion of equitable relief, which the court framed it was doing this case and was not giving relief under the statutory guideline. That's correct, Your Honor. The court acknowledged that she was not entitled to this relief statutorily and said despite the fact that she's not entitled to do it and he could not award it pursuant to the statute, he was going to exercise his equitable powers and find it was appropriate relief. And what case do you have that tells us that the district court did not possess such broad remedial power? I think you can look to Lester H., where this court says compensatory education has to be compensatory in nature. You cannot award things that are prospective in nature. No person over 21 has the right to enforce the statute. Isn't compensatory education, by definition, prospective in nature? It requires something to occur in the future. But it is to make up for past losses. So things that make up for deprivations of education, in other words, the ability to go to a school, to pay for that school, to pay for transportation to that school, to even pay for tutoring, all those things make up for the deprivation of the lost education. But the IEP plans for future. It sets goals on where the child should be heading, on the things the child should be achieving. And that is so that the child can make educational progress. What the court effectively did is said that this adult has to make educational progress and that the school district, as the LEA, is responsible for that. In essence, it entitled her to a FAPE, which this court has said, as recently as 2007 in Lauren W., that a FAPE is only available to those individuals under 21. So if a school district fails in awarding FAPE from age 16 to 21 and is adjudicated as such, you're saying that the court, as a remedy, can't award compensatory education beyond age 21 that includes the provision of a FAPE? I am saying that the court cannot award compensatory education that requires the school district to continue to perform annual evaluations, construct IEPs, and to serve as the local educational agency. What case law says that? What case says that it can't order those things? There are no cases that deal with this directly on point. There are no cases that, in fact, affirmatively award IEPs. Exactly, exactly. So we have a jump ball here, and why don't we defer to the district court's broad remedial powers? You've quite candidly and correctly acknowledged liability on your client's part. So what's a trial judge to do? You have to impose a remedy. If there's no prohibition, why isn't the remedy? Why shouldn't we defer to what it chooses in its discretion? It is our position that there is a prohibition in the statute because the statute is limited to providing those rights to people that only go up to age 21. And Congress could have simply said that those rights may be extended, but they didn't. They put a firm limit on it up to age 21. And this court- Congress, in fact, never even said anything about compensatory education, did they? That's true, but this court has been very careful. Go ahead. Sorry, sir. That's a court-made remedy, correct? That is correct. Okay. Well, given that compensatory education can come in a lot of different forms and shapes, didn't the court properly grant an IEP and an LEA relief as part of a compensatory package? Your Honor- You know, he's not doing it under statute. He's doing it equitably. It is our position that that is not consistent with the purposes of the statute. The purpose of the statute is to educate children and to provide those rights to children. And the problem we have here is that Farron is an adult, and she's no longer entitled to those same things. Is it your position that the relief granted has to be appropriate under the Act? It is my position that it must be appropriate under the Act, that that is what makes it appropriate relief. And we can't lose sight of the fact that- The court granted equitable relief and directed the school district to provide an IEP through, I think, the 2010 school year. Did it not? We are in the first IEP. We are still in the first court-ordered IEP. There are two more to be done. Two more to go. Okay. Has your client currently provided an IEP? Yes. There's a current IEP for Farron. So the district court's order was not stayed? That's correct. All right. Okay. So the question is not only the additional two years here, but also the precedent and what this means to your school district and others. Absolutely. And the idea that there are additional due process rights that come along with IEPs and further challenges. Excuse me. Sorry. The Elwin Institute says we're only going to provide Farron C, the education, if the school district of Philadelphia provides the IEP. That's correct. What's the court to do? I think that there is an obligation to develop a record as to whether or not there really are alternatives where an IEP and these services are not required. Well, you're the breaching party. Why didn't you develop such a record? You seem to be placing that on the other side. Because right now the statute says that it is the parents who dictate, and the parents insisted on this program, and we agree it would be a wonderful program for Farron. The problem was that Elwin stepped in and, after everyone we thought was in agreement, said that they required the IEP. And we are in an unfortunate situation where we have a person who is severely disabled, and the kinds of programs that will work for her or may be appropriate for her, and what the educational component of them I think is a little bit difficult. Just to this case, is it true that the record here does not disclose any reasonable alternative to the Elwin education program, which requires an IEP and an LEA? And if not that, what do you think would have been an alternative to that? There is testimony in the record. What's the alternative to that? The district judge made this equitable determination that Elwin was proper and so forth, but she couldn't do that without, they require that there be an LEA and an IEP. And so the district judge said, well, fine. What is the alternative for this case? There is testimony in the record about the existence of alternative programs, adult education programs, as opposed to what Farron was in, which was a traditional, for lack of a better word. Specifically what? Education program. Specifically what? They didn't identify them by name, but there's testimony where there are multiple programs. They acknowledge the existence of multiple programs who could provide services to Farron. Assume you're correct that there are alternatives which are not identified before us in any event. They're not in the appendix. What then would make what the district judge did unreasonable? Again, because it provides continuing obligations for the school district beyond the statutory limitation, it creates an open-ended obligation. The statute said that school districts are required to provide education for children. And what this has done is created the school districts having an obligation to provide education for disabled individuals without regards to their age. Okay. Ms. Goodchild, we'll have you back on the call. Thank you. Ms. Serrini? May it please the court. I'm Gabrielle Serrini, and I represent Farron and her parents who are present in the courtroom today. What this case is about is whether Farron, a severely disabled individual, will be able to access the compensatory education owed to her by the school district or not. In essence, whether Farron will have a right with no remedy. This case is not, importantly, is not now, nor has it ever been, over the three prior levels of review in the administrative level and the district court, about whether Farron should be permitted either to have an IEP at Elwynn or whether her parents should be directed to accept some other form of compensatory education programming which the district has offered. The district court found as a fact that the school district did not offer any suitable alternative for compensatory education. That's a finding of fact in the district court's opinion. Well, it's hard to believe that there is absolutely no other alternative. I mean, there must be, you know, your friend across the aisle says there are alternatives, and I don't know of any offhand, and there's none in the record. But are you saying that there is no alternative to what the district judge did, that he was absolutely compelled to do this or there was nothing else that he could do? What I can tell you is this, Your Honor. The parents looked at, because without help from the school district, the parents looked at alternatives. All of the alternatives that the parents looked at required IEPs, the same as Elwynn, but obviously didn't have the same history with the student and the same knowledge of the student. You had the – clearly you – there's a trust fund created. You had money to provide compensatory education. You have providers. Elwynn was one of them. Elwynn is where you wanted to go. Why this necessity for an IEP? I can only surmise, Your Honor, because I can't speak for Elwynn or any other APS, but I can only surmise it's because of the desire of the APS to have a clear line drawn between who is the LEA, who is ultimately responsible for – Who's the APS? The APS would be Elwynn. Approved private school. Approved private school. I'm sorry, Your Honor. Yes. I can only surmise that these approved private schools want a clear line drawn as to who is ultimately responsible in the event of a failure of the IEP. They want to pass the buck, right? Yeah. That's all well said. But it seems to me that a compelling argument made by the school district is that the IDEA clearly only covered individuals up to the age of 21. I mean, you don't dispute that, do you? No. They have a right to a free, appropriate public education through the age of 21. That is the statutory mandate of the IDEA. Okay. And Burlington and Forest Grove have clearly, given the courts, have said there's a right to compensatory education for violations that occur before 21. But I don't see anywhere in those two cases or any other that a court has extended the obligation for an IEP beyond the age of 21. I do think it's an issue of first impression, Your Honor. However, I think that there is precedent that can be drawn from this court's prior decisions, namely Lester H. Lester H. was a case in which this court granted a disabled student the opportunity to access his compensatory education beyond the age of 21. Two and a half years beyond the age of 21. And the language of that decision was so that he could access his compensatory education in order to receive the remainder of his free, appropriate public education. But never imposed an IEP. That wasn't an issue in the case. I know. I'm saying never imposed IEP. This case, I don't like to use the expression, it's sort of like a dangerous precedent. It could come out to haunt us in the next case where we say, well, the 21 meant nothing. We said in there and, you know, this or that. So, I mean, aren't we going out on a limb here? Because the statute is definitely contrary to what we're allowing if we were to grant a fair decision. I certainly understand Your Honor's concern. And I think the district court certainly apprehended that concern as well, although the school district really did not argue that before the district court. Well, they argued that the relief is fundamentally different from the structure of the usual IEP in the LEA. And in his discretionary exercise of his equitable powers under the IDEA, because, again, there's a distinction between what is statutory and what is permissibly equitable under the statute. I think the district court was extremely sensitive to the possibility of setting a precedent. And for that reason, it was explicit in particularizing this decision to the unique facts of Farron's case. Why could the district court award equitable relief without awarding, mandating an IEP and an LEA? In other words, weren't there alternatives that could have reasonably been employed without demanding that the IEP and LEA be put in place? Respectfully, Your Honor, not on this record. And the school district certainly did not create a record that would lend itself to that interpretation. That's because there's no other school, right? If there had been other schools that didn't require the LEA and the IEP, then there were bona fide alternatives. But there doesn't appear to be evidence to that effect in this record. That's correct. That's absolutely correct. And the district court did find that. And that was part of the reason for the district court's decision. You know, we certainly understand that this is an unusual case. In my years of representing school districts and students, this is the first time that I've come across a situation where a student required an IEP to post 21. But I think that Farron is an unusual individual. She is profoundly disabled. Her cognitive ability is in the first percentile. She lacks basic skills. She has serious problems with skill regression. She's completely dependent on her parents. And her parents, understandably, don't have the expertise to devise a compensatory education program for her. How do we make sure this doesn't go on forever, though? I mean, isn't that the concern? The school district is saying, look, now we've got three more years, and then you're back in court again, and then you're getting more attorney's fees, and then you get another three years, and this could go on indefinitely, right? I think there are two parts to that concern. I'm guessing that the school district has two parts to that concern. One is that in this particular case, litigation could continue indefinitely with this family, and I disagree with that. The family has already approved one IEP. Farron was returned to school in September of 2009 and has been attending school, almost completed the first year of her compensatory education without incident. We would expect that that will continue over the next couple of years. We would not expect that the parents would seek compensatory education for an IEP that they've already approved under the circumstances of the facts of this particular case. And so, you know, other than a complete failure by Elwin, who has educated Farron historically, and Farron has made progress there, I really don't see no end to litigation in this particular case between the school district and the parents. The parents could say, we may only want Farron to go part-time, and since we have a sum of money that's compensated for what she didn't get, the sum of money is going to stretch out now to six years. And the school district may be required to have an IEP in place for part-time education over six years. I don't think that the district court's order would permit that possibility, Your Honor, nor – They could go back to have the district court amend the order, could they not? I cannot imagine a circumstance under which this particular family would want that relief because Farron – Okay, I can give you a hypothetical. Right, but I think bringing it back to the reality of Farron's needs, this family has only ever wanted Farron to be getting as much schooling and as much services as possible because she really requires it, and any lapse of programming causes her to regress. So this is not a situation where the family is going to want to be, you know, having things and stretching them out ad infinitum. I agree with the statement that for the appropriate relief here to be given, it has to be appropriate under the Act. Yes, but I think that the Act contains an exceptionally broad relief clause which permits a judge in his discretion to exercise his equitable powers to further the purposes of the IDEA, which include, you know, ensuring that particular students' needs are met for – Where does it say in the IDEA that there should be any education covered by the IDEA past the age of 21? It doesn't, but there's case law that – Doesn't that hurt your argument significantly? I think if it weren't for Lester H. and Carlisle v. Scott P., it might be, but we've already had instances in which this very court has extended rights – But only compensatory education beyond 21. Correct, but prior to Lester H. and Scott P., that right didn't exist either. Okay, you got one step, but now you're trying to take it a second step, it seems to me. We're trying to take a step in a very particular set of facts in a situation which is not likely to repeat itself, where a school district has undeniably denied a student three years of compensatory education, then reneged on a promise made to the parents a month before the student's birthday that she could continue as an eligible child until 2010, only a few months later to take that promise back, and to have a situation where the student's needs are so complex and the pool of potential providers of educational programming for the student is so exceedingly small that there is no remedy that would allow the student to access her compensatory education other than that which the district court granted. But as Judge Dalzell said, he's very concerned that the student will be in a situation where she has a right with no remedy. Liability is clear in this case. She was denied three years of compensatory education. During the litigation of this dispute, she lost two more school years, only to return to school in 2009. Our heart goes out, no question about it. And the concern is, shouldn't the district judge have sought out some other reasonable alternative for her other than what he ordered, is it stands the fundamental statutory principle that a school district's duty to provide an FAPE and an IEP terminate at age 21? It completely stands out on its head. So for me, the question is, well, shouldn't he have thought of some other whatever is out there and required the attorneys to suggest other alternatives than this so as not to offend the principle of the statute, which says school district age 21, you have no other obligation for FAPE. The parents did seek out alternatives and were not able to find any. The school district has taken the position consistently that it had no obligation to seek out alternatives. And this is very clear on every level of prior review. Hearing officer, appeals panel, and district court that the district took the position that its job was limited to writing the checks. So the district was not required by anyone and also didn't provide facts to support the kind of record alternatives that Your Honor is suggesting. And I think that, you know, Section 1415I of the IDEA expressly says, and it's broadly interpreted that a court can grant such relief as the court determines is appropriate to further the purposes of the IDEA. It's discretionary. And so Judge Dalzell's decision, you know, having no reasonable alternatives through no fault of the parents, didn't see a reasonable alternative and used his equitable power to prevent this student from basically being blocked from being able to use the three years of compensatory education. When you say he used his equitable power, you're assuming that he had the equitable power. I'm assuming that. That's the issue. That's the issue we have here. And he did too. I mean, he interpreted Section 1415 as also, while no statutory right existed, as permitting him to exercise equitable power. And I would respectfully submit that this court's standard of review of that exercise would be an abuse of discretion, which this court has instructed in case law, which is cited in my brief, Lindy Brothers, Barnes Foundation. The standard of review is it's only an abuse of his discretion if no reasonable person would adopt the district court's view. If reasonable minds can differ, then the decision should stand. But isn't it also an abuse of discretion if it's in violation of law? If it's in violation of law. If it wasn't permitted under the IDEA, the mere fact that he ordered it, if it violated the IDEA, it would be an abuse of discretion. If this court were to find that there is no, in fact, equitable power under the IDEA, then Judge Dalzell would have been in violation of the law. However, I think that the court's past precedent in Lester H. and Scott P. I think the Bernardsville decision, I think the Forest Grove decision, all would be in the same boat in that instance, respectfully. I understand your argument. Thank you. Thank you very much. Ms. Goodjob? Ms. Goodjob, just for my own purposes. Sure. The one Achilles heel I see in your argument, which may or may not be fatal, is that according to this record, you really never proposed any other alternative than the one that the district judge enunciated, that you didn't give any other ideas as to how to handle this very complex case. Your Honor, that is true with respect to the district court proceedings. But if I can direct you to the notes testimony from the due process hearings, the record at 111A, the L1 official testifies as to alternatives, specifically on page 63, the question, and if Farron were to be enrolled in one of the adult programs, answer, uh-huh, yes. Question, she would not need an IEP, would she? Answer, she would not need an IEP. I believe there are other programs that are written, but I can't speak to that specifically. Question, and she would be provided with transition planning, vocational programming, and things of that nature in the adult side. Is that correct? Answer, it would depend on the individuals that would review Farron's case would determine what would be most appropriate for Farron. Question, those are some options that are out there. Is that correct? Answer, there are adult services, yes. Go ahead. That wasn't presented to the district court, though. It was part of the record, Your Honor. Like I said, there are no specific program alternatives. Well, we're reviewing the district court's decision, and we're reviewing what happened in the district court, not what happened before the district court. Right, I understand, but there are. And in order to reverse him, we've got to find out what he chose was unreasonable, because this is abuse of discretion. You've indicated that yourself in your brief. So how can he have abused his discretion when, in the district court record, there's nothing that gave him an alternative? Because I think that there are two things. First of all, it is the parent's decision. In compensatory education, precisely because the school district no longer has responsibility for the child, they are not allowed to dictate the educational programming. It is now the responsibility of the child. And, in fact, that was the position taken by the parents at the due process hearing. And, again, if I can direct you to page 130A of the record. But we're only at the district court. No, this is the testimony of the position they took, that it was in the due process hearing. It was the due process hearing record before the district court. It was, Your Honor, yes. And that was the basis upon which the district court entered the injunction, was it not? That's correct, Your Honor.  That is correct, Your Honor. So the. But what was your argument to the district court? Did you argue to the district court that there was a viable alternative short of ELWIN, which required the IEP and the LEA? I would have to double-check our briefs, but I believe that we did suggest that there are alternatives that she could be placed in adult programming. But you didn't suggest any. We didn't particularly suggest any, again, because she is beyond 21. The compensatory education is in the hands of the parents. And they are the people who decide. We cannot force, as a school district, Farron to attend a program. And that's exactly what is the testimony on 130A. It's that the hearing officer says the school district does not have the right to propose an IEP that would place Farron in a school district classroom if the parents don't want it. Is that right? And then counsel for Farron says that's correct. It is the parents who dictate. So no matter the alternatives offered by the school district, if the parents refuse, the school district has no way of forcing a child to take advantage of compensatory education. All right. What about Forest Grove? What do you do with that case? As I read it, the Supreme Court just last term held that tuition reimbursement is available, even though the statute doesn't permit it. Wasn't that a case where a judge imposed a remedy, i.e., tuition reimbursement, that was not expressly permitted under the statute? I think the distinguishing factor between this case and Forest Grove is, again, the nature of the relief. That is a tuition reimbursement. That is looking back. That is for what has already happened. That is compensating. The IEP here is, again, looking forward and asking the school district to ensure the educational progress of a child or of an adult, a person over 21, an obligation that they do not have statutorily. But under Lester H., we, our court, not this panel, but our court, which binds us, held that the remedy can be prospective beyond 21, right? So wouldn't we need to take this case en banc in order to approve of your position? I respectfully disagree. The language in Lester H. actually says that the crucial difference is the nature of the relief requested by Lester. He says that they're comparing it to Honig v. Doe, and it says, Doe had no right to demand that the district comply with the act either presently or in the future. The act only gives minors the right to education. Lester, in contrast, is only requesting a remedy to compensate him for the rights the district already denied him. He has the right to compensation. Here, Farron is requesting, she requested in the district court the rights that the school district denied her. And the district court held that that remedy required something to be done in the future beyond age 21. The remedy involved more than compensatory education. It involved more than the educational component. It obligated the school district to monitor and ensure educational progress, which is what an IEP does. But didn't the district court find that for her to get compensatory education, the IEP was a component of that? It was a necessary component of that. No, he found for her to go to Elwin, which was the parent's choice. Right, and Elwin required those components. Right, but again, I am saying that, you know, this is a tough situation and it's a sad situation. But unfortunately, the statute doesn't allow that particular remedy. There are other alternatives, and they might not be the ideal education for Farron. But again, the school district does not have the obligation to provide an ideal education or a perfect education. It has a basic education. Ms. Goodchild, I think what Judge Hardiman is getting to and what the problem with Forrest Grove is, is that the statute didn't provide for compensatory education either. Well, that's correct. And the Supreme Court has said that in order to not frustrate the intent of the IDA, compensatory education needs to be permitted. Is there a real difference here? Your Honor, from the school district's perspective, there is. If you look at the IDA, the purpose is to provide education-related services. And I think where we sort of get bollocksed up is the use of the term education and FAPE in multiple situations where it has sort of a fluid meaning. There is no question that we are required to provide her an education for the entire period of her eligibility. And that is why courts allow compensatory education to go back and make up. When schools fall down on the job, they say it's not the student's fault. So therefore, the school has to provide either services or payment to get the students where they should have been. That is the education. But they don't require the schools to go back and continue to make IEPs and continue to make goals and set goals for their educational progress. There are cases where there's been a student has graduated and has gone on to college, and she has a compensatory education award. And what is proper in that situation is looking at where she is. She is an adult. What she needs is further support for the education pieces that she missed. And so she gets tutoring. It's not that she gets somebody to say, well. She doesn't get an IEP. Right, exactly. She doesn't get an IEP. Okay, I think we understand your argument. And we thank both counsel for a job very well done. And we'll take the matter under review. Thank you, Your Honors.